Good afternoon, counsel. I'm Judge Dennis, together with Judge Higginson and Judge Costa, three of your panelists today, and we're welcoming you to the Fifth Circuit. And we'll begin with Mr. Kruckenberg. You may begin, sir. Yes, thank you, Your Honor, and good afternoon, and may it please the Court. Caleb Kruckenberg on behalf of Michael Cargill, the plaintiff in this matter. ATF's rule classifying bump stocks as machine guns, even though bump stocks do not alter the mechanics of a semi-automatic firearms trigger, was invalid. And in upholding the rule, the District Court committed at least four legal errors. First, while recognizing that the ATF rule is legislative, gap-filling rule, the Court failed to accept ATF's own concession, that it lacked the legal authority to issue any legislative rules. Second, the Court also erred by finding the statutory definition of a machine gun to be ambiguous. In criminal cases, prosecutors have often convinced courts that these same terms are not ambiguous. But without any ambiguity, ATF had no power to fill any gap in the legislation. The Court also erred in not applying the rule of lenity. As this Court held in the United States v. Oriana case, even when an agency issues a rule, if it has criminal consequences, then this Court will apply the rule of lenity instead of deferring to the agency's expertise. And in a criminal case, uncertainty goes in favor of liberty, and in this case, in favor of Mr. Cargill's interpretation. And finally, the rule contradicts the plain statutory text of the definition of a machine gun. It reads the phrase, a single function of the trigger, to encompass a bump stock that, as ATF's trial expert testified, does not alter the trigger mechanism of a firearm, and still requires the trigger to reset mechanically for every shot that's fired. Mr. Kukunru, this is Judge Higginson. I'm most interested in the last point, because I think that might obviate some of the others. Judge Ezra here, like in Staples in the in particular, I'm focusing on paragraphs 40 to 52. Does your argument contend that anything in his fact findings is clear error? No, Your Honor. Okay, so when he says that the bump stock here shoots automatically, whether it's a finger or a post put in it, that once something's in there, it will continuously fire, you accept that as a fact finding? We accept the fact finding. I don't accept the legal conclusion that this is an automatic fact. I'm asking, can I be confident that you are not alleging any of the facts he lists in those 12 paragraphs contains error? No, Your Honor, and I think contextually that paragraph that you're referencing, I think Judge Ezra's finding of fact was that whether it's a finger or a post, as long as the shooter uses the other activities, and in this case, he's talking about pushing forward with the firearm continuously against the post. That was the judge's finding of fact, is that that is part of the process. And Judge Ezra concluded that that was automatic fire, and our contention there is that is a legal error just with the definition of automatic. But how do your interpretation, if that's automatic, why isn't a traditional machine gun automatic if it requires a steady constant pressure with the finger, just as these devices require a steady constant pressure on the barrel? What's the difference? Well, Your Honor, with a bump stock, it's two inputs. And that was Judge Ezra's finding of was that to operate a bump stock, the shooter has to push forward continuously, also securing and also pulling backward. Usually it's the non-shooting hand. You put it on the finger ledge and you pull backward. Why wouldn't that interpretation of automatically apply, your interpretation applied to a traditional machine gun, where again, the gun isn't doing it all by itself. It requires a human steady input. Is it the one input versus two input approach? Well, I think that's certainly sufficient. And the trial expert testified and Judge Ezra found, as a matter of fact, that you cannot operate a bump stock one handed. You can't just hold the trigger down. And that's distinguishable from a normal machine gun. A normal machine gun makes sense. You hold the trigger down, you just depress it once, and it continues to fire automatically. What in the statute supports this one input versus two input distinction? Well, so there's two distinct arguments there. There's the definition of the term automatically. There's also the phrase, the single function of the trigger. So if we look at the phrase, single function of the trigger, whether it's automatic or not, that's still a necessary part of a machine gun. And the trigger mechanism, the function of the trigger, it has to act only once to fire more than one shot to be a machine gun. Isn't that interpretation? I mean, you're well prepared because you've been litigating this. I think you're in the Supreme Court now on this. So you know this better than I do. But just because it's a difficult issue for multiple circuits, your interpretation would seem to mean you have to insert the adverb mechanically, sort of a single mechanical motion of the trigger. And my thinking is, Congress in 1934, why would they have cared about the mechanics of the gun? Their concern was, can a shooter make this into a continuous, rapid, accelerated fire? Yeah. So it's back to this pull versus mechanical thing. Well, to answer your first question, I don't think that's a distinction that Congress made. I think they deliberately did not make that distinction. Originally, semi-automatic firearms were prohibited under the statute. The statute was amended in the 1960s. But the distinction Congress made, the line they drew, was not about rapidity or danger of fire. It was about a mechanical distinction. And if you look at this court's decision in United States versus camp, that was a decision that dealt with a motorized device made from a fishing reel. And this court said very clearly, that is a trigger when you turn the device on. But just intuitively, why would Congress have wanted to come up with a statutory definition that would allow manufacturers to make what they're trying to prevent because of mechanical innovation? Isn't it much more logical that they were trying to prevent accelerated fire? And they were trying to use terms that are as broad as possible. And the last thing a court should do is force them to rewrite more narrowly what they wrote to be broad. I disagree, Your Honor. And the reason is, it's not about rapid fire. One of the findings of fact here is that actually, someone can fire a semi-automatic firearm more quickly than a fully automatic machine gun. That was not a distinction Congress made. And so when a court looks at a statute and says, well, it kind of seems like a machine gun, or it looks like a machine gun, even if it doesn't meet the definition, then Your Honor's concerned about manufacturers trying to get around the definition. I mean, that's why there's a lie. If through a single action, there will be a continuous spray of bullets. I would think that's what the language is saying is a machine gun. And then they were the careful fact findings saying, this isn't like this Louisiana fellow that can pull it really rapidly, maybe even faster than a machine gun. But this is a device that on its own keeps going. Once there's a single action here, the finger pull. Well, so I disagree with the single action. First of all, I think that the finding of fact is that the shooter still has to push forward continuously. And the trial expert described it as overcoming the recoil impulse. That is what the shooter has to do between rounds. A second of all, it's not a single action. The finding of fact in the testimony was that the trigger lever has to reset for every round. And the way it works, what's that's called a bump, right? Well, no, it has to reset before it can be bumped again. What the shooter has to do is essentially, you push forward with the firearm with your non-shooting hand against your trigger finger. Once you hit the lever, once you push it into the lever, the gun recoils, there is a separation between the finger and the trigger lever. And mechanically, the trigger lever resets. It has to every time. If it does not reset, mechanically, it is, it is doesn't, I mean, all these, the sixth and the 10th and Timkovich and Henderson, it all depends on whether they're talking about mechanical or pull. And I, maybe, maybe, maybe you'll tell me that's simplifying. Here's just sort of a, since there's a larger world going on out there, a big landscape, you're, you're in front of the Supreme Court on this. Are the same amici briefs that were filed there all firearms to us? I think there's a large overlap. I don't know if it's complete. Um, and, and if we were to rule and affirm judge Ezra, that would be consistent in outcome with presently the sixth and the 10th in outcome, not in approach. Well, I don't think it outcome because I believe the panel decision has been vacated in the sixth circuit pending on bunk decision. Um, so I think the only final decision that remains now is the Ezra. And so I just want to be precise in that answer. There has not been what's that DC circuit in 10. Oh, excuse me. Yes, your honor. And I believe that was a preliminary injunction. Um, and I'm not sure if there's a final judgment. I am not involved in that litigation. There. And, and as we noted in a, in a 28 J letter, I just directed this court's attention as well. The Navy, uh, Marine Corps court of appeals recently invalidated the bump doc or a prosecution based on the bump stock rule, um, consistent with, I believe our position in this case. Um, On your first point, statutory authority. Yes. Do you want to just clarify again, whether you think you have to, and whether you have distinguished Mayo foundation and city of Arlington? Well, your honor, I don't think, uh, I think, well, I think these are different statutes and when we're looking at the statutory, uh, delegations here, for lack of a better word, when we're looking at 18 USC, nine 26, a, uh, that's the only, that's the only delegation to the attorney general. Um, and it talks about necessary rules to carry out the provisions of the gun control act. The definition though, of a machine gun is in the national firearms act. Uh, that is not part of that same statute. And so I don't believe that they were looking at nine 26 a as a general conferral of rulemaking authority. Well, and I think maybe in a vacuum that might be the case, but when we have the ATF, uh, if we look at, excuse me, 7,805, 28, or 26 USC, 7,805, the other provision, it strips the attorney general specific authority, uh, or the ATF, excuse me, of authority with regard to, uh, firearms regulations in favor of homeland security. Again, in Mayo, the court said, quote, express congressional authorization to engage in the process of rulemaking. That was 7,805. Well, 7,805 though, the only, the only, uh, conferral of authority to the attorney general is the administration and enforcement of the national firearms act in 7,805. Um, and instead, the other provisions, I believe they go to the treasury. Um, and, and that I think is just a unique sort of structural component of whether the ATF has these kinds of rulemaking authorities. And I, and I do think it's worth noting that the ATF has asserted all along. They said, we don't have substantive rulemaking authority here. Um, and, and I think that is the correct reading of the statute. Um, but even if we go beyond that, even if we assume the ATF could issue this rule, um, I think there's a much sort of simpler way to resolve that. And simply there is no statutory ambiguity here that allows the ATF to try to fill in a gap. Um, and these terms we're talking about automatic, um, function machine gun, even there, we cited a number of cases from other courts that have said, look in a criminal prosecution, these are simple terms. They are not ambiguous. Um, and anyone can understand that. And they've affirmed conviction after conviction when criminal defendants have said, how could I possibly know this was machine gun? And I think it is, um, somewhat disingenuous for the government to say, well, this is ambiguous now, these same terms. Um, although we've been arguing for years that a normal ordinary person obviously knows what they mean. Um, and I think respectfully, Judge Ezra just sort of skipped past that point. And it's not just that they're undefined. That's not ambiguity. We know that from the Kaiser decision. Well, he skipped past it because he just reads the best reading of the statute to be opposite, right? He's not giving any Chevron deference. That is correct, Your Honor. Um, and, and I think Judge Ezra was a little bit conflicted in that point though, because if Judge Ezra was correct that the statute is unambiguous, um, then he still should have invalidated the rule, which he determined to be a legislative rule because the agency has no, you can't issue a gap filling rule for an unambiguous statute. Um, this court has recognized that time and again, as has the Supreme Court. So there is an inherent inconsistency in what Judge Ezra decided. Um, and I, and I don't believe that this court can follow that same path without committing that same error. One thing I've been wrestling with, I didn't see it in the DC or the sixth or the 10th is, you know, um, Staples, the court was really wrestling with what's a machine gun too, at least in oral argument they were. And then Justice Thomas writes for the court. And in his very first footnote, it looks to me, one might say he answered the question in front of us because he's, you know, that first footnote, well, it seems to me it's got two, three sentences. The first one says pull of trigger pull. And then at the end, he says, this is a machine gun. Now the second sentence may pull it back a little bit, no pun intended, but, um, when I read that footnote, I have any other circuits sort of highlighted that it seems to me the court may have already answered our question. Well, I don't think it has because the statute uses the term function. But the Supreme Court has said, here's what a machine gun is. And the first sentence they say is a pull of the trigger. Well, they say the archetypal machine gun, of course, is the pull of a trigger, but that's not an exclusive term. And there are other cases, including this court's case in camp that say that it's not just, that's not the only kind of trigger. It's not just when you pull. Um, in camp, like I said, it's the fishing reel, the shooter turned it on, right? He didn't pull a trigger. He turned it on. That's the function of the trigger. And, and in some ways he sort of adopted that argument. He looked at what Staples said and this court rejected that because it doesn't, that's not the line Congress drew. That's not the term they used. And I think it makes sense. I think Congress was, was anticipating there's different types of triggers, different types of firearms. Um, and it's not just you pull the lever, it's you make the trigger function. That's why they use that term. But here trigger has to function every time. Um, you, and it happens to be the lever. You have to make it function. You have to trigger it or the gun will only fire once. That was budget as it was finding the fact. And I, and I think that answers the question. This is not a machine gun if for no other reason, but that, um, and your honors, I see my time is up. Uh, thank you. Mr. Stern. Thank you, your honor, Mark Stern for the government. I'm happy to begin wherever the court would find it useful, but to go back to, um, where my friend began and ended with the definition of what a machine gun is. And I think that the sort of, with respect to the single function of the trigger question, this has boiled down to the question of whether the fact that the trigger itself keeps moving after the sequence of firing is initiated, takes this out of the definition. And that's sort of what the sixth circuit decision that's since been vacated, majority referred to as the mechanical way of looking at it, as opposed to the way that the shooter sees it, where as basically everyone agrees, there's essentially no difference between whether the trigger is moving back and forth or not. And indeed that was the case in camp. You started it with an automatic switch, but the actual trigger that was on the gun kept moving back and forth. And here too, you there, you keep a finger, but as the ATF expert testified, you could just as easily have put a rod there. All you're doing is you're holding your finger steady. You aren't pressing it again, and what the equivalent as the court did say very explicitly was that there is no practical difference between a prototypical machine gun where you have to keep your pressure inward and the bump stock where you keep your pressure outward. Mr. Stern, I'm going to ask you a question that was asked in Staples. If you've got a gun that's defective and it fires two rounds because of a single pull of the trigger, is that gun a machine gun? I don't think so. I haven't, I'm sorry that I haven't considered that, but the, I mean, I think the, if a, if you have a defective gun that was not designed to produce this result, I'm not familiar with any ATF ruling that would have said that in the agency's view, that would be properly classified as a machine gun. What we're concerned about are the guns that like, like, or the modifications to the guns. In order to answer the question before us, do, are any of Judge Ezra's factual findings relevant, or is this purely a question of law? I think that the factual findings are certainly relevant. And counsel is correct in saying that there are also obviously questions, you know, mixed questions of fact and law that are involved in the case. We don't think that this is, can be decided purely as a question of fact, but we do think that his fact findings, which are based on not only on the record that was provided, but wanted to judge, ordered a trial, he heard expert testimony, which was provided, it's all in the record. And we do think that the fact findings there are indeed relevant. And they also, just even at the, to the extent that we move into the area of a mixed question of fact and law, they certainly inform the way the judge's understanding, for example, of why there is no practical difference between the bump stock and the prototypical machine gun. Focusing just on the language, a single function of the trigger, would you say that Judge Timkovich, Judge Henderson, and the Sixth Circuit panel all interpret it the same way? And if so, what in the government's view is wrong about their interpretation of that language? Well, I think to the extent that they, I've had, I apologize that I can't remember what each of those judges said, but the one that's clearest in my mind is the Sixth Circuit panel majority, and which drew the very clear distinction between the, basically, you know, and I apologize for repeating myself, but the, what the court, their panel majority said is, look, yeah, from the shooter's perspective, yes, you're just doing the same sort of thing that you would, that you're making essentially one move, that's it. On the other hand, from what the court said is, if you look at it mechanically, the trigger keeps moving. And what ATF said, and this is not the first time ATF has said that, I mean, this has been consistent, like, since at least 2006, that it is like a pull of the trigger, not the fact that the trigger keeps moving. So that, for example, the Aikens Accelerator was the subject of the 2006 classification that was heard and reviewed by, like, the Eleventh Circuit. The, sort of, that trigger kept moving too, as did the physical trigger in the gun in camp. And as the ATF classification rule says here, that there are also several other devices where, if you just look to this question of, does the trigger keep moving, those would no longer be machine guns. So there's nothing new, like, about, like, you know, the agency's, like, understanding of the statute on that point. And, you know, we think that, like, it fully accords with the language of the statute, with Congress's intent, with the legislative history, well, which we've cited in the brief, going back to the original 1934 report, the statement of the then president of the National Rifle Association. One way of, I mean, there's a simple way courts can just say, well, bump stocks didn't even exist in 1934. So it's Congress's job to update the law, not ours. Well, I think that Congress was understood that the, it didn't want to just have a definition, because Congress was doing that, to easily have just, sort of, done something saying, well, you know, the following guns and those, what have those, and pick that two characteristics, you know, go similar. But the point of this, you know, and was that Congress knew that there would be new, sort of, developments in the future. And the 1968 Gun Control Act, which revised that definition, clearly understood it, because that's where the Congress specifically addressed the issue of all the things, like, sort of, make clear that any device you might add on to a, to the semi-automatic, to transform it into a machine gun was also covered, not just the original gun. So Congress absolutely understood that there were going to be attempts to do this. It didn't know what they were all going to be. But it said, well, when you try to do it, those are going to be machine guns also. So I think that, you know, and that it's entirely, sort of, appropriate to be considering the impact of the broad language that Congress chose when it enacted the statute. And that's been- I have a question about the government's view of the statute. Is it your view that the statute's unambiguous in your favor, or just that you think the best reading favors you? I think we've thought of it in terms of, and let me just back up. I've thought about, like, the relationship between best reading and ambiguity a lot. What we've said is that it's the best reading now, like, so that to say something is- so that we do not think it's ambiguous in the way that, you know, counsel suggests that we've said this is ambiguous, and that the district court said it was ambiguous. The district court said it didn't need to record any deference to the agency, because this was clearly the best reading. And that's sort of- I read the district court to say it's unambiguous. Yeah, well, the district court said what the- that's what the, I mean, that's what the agency said in this classification. It says repeatedly, like, at one point, there's a statement, they're responding to questions. So they said, have you considered other alternatives? And the agency says, look, we have, like, we think that the statute compels this. We can't consider other- there are no alternatives to consider. And there's, you know, and it says that repeatedly. And the whole point of the rule was, they said, look, we made a mistake. You know, it's not the first time that made a mistake, and corrected it, that it happened with the Aikens accelerator also. And they said, look, we sort of, we did this over time, we've given sort of kind of, like, very incomplete and sometimes conflicting accounts of why we thought this wasn't the machine gun. And now, like, we're gonna, like, address this fully and this is what the statute requires, and that we do not have discretion. I mean, and that's, that's a crucial point. The position of, like, the ATF, of ATF, in that rule, which we think isn't the totally correct one, is they did not have discretion to come to a different conclusion. And that's the position that we've urged. We haven't been urging that it's ambiguous at all. I don't quite know where that suggestion comes from. Certainly, the district court didn't think that it was ambiguous. The district court specifically said, I don't need, the whole question of deference doesn't enter into this. This is the right reading of the statute. And that's what we think, too. It's, you know, it's correct. It's consistent with sort of the way, like, thinking about what a function of a trigger means, the way it's been understood, consistently, you know, and looking back, in going back to the origins, the legislative history, congressional intent. So everything leads you to the same conclusion here. And our whole point has been not that, like, the agency said, well, there are a couple of ways of looking at it that we think could be kind of one way, kind of the other way, like, but we think this is sort of the better way. Like, that is absolutely not what the agency thought. If we affirm Judge Ezra, we are creating a split, at least in approach with the Tenth Circuit, correct? That's correct. And the other question, thank you for that answer. Just, it's succinct. My other question is, do you draw as much as I had seen in footnote one of Staples or not? Do you recall the footnote? I do recall the don't know that the, I think there may be language in that footnote, I have to look back at it, that indicates that the court was referring to how it was addressing the concept of what's like an automatic as opposed to a semi-automatic within that case. So I'm not sure that it represented, again, I'm sorry, I have to look back at it. But what I can also say is the Seventh case did look to that language. And it also just said, like, it looked at it and said, and that, you know, and that we think that that was what the court thought. And then it goes, but we also think it's correct. And, you know, and I think that whether or not one regards the staple, that staples language as a definitive holding of the court, it is clearly 100% consistent with what we think the statute says, and what we've, what urged the court to conclude. Do you want to address the other side's argument about the legislative rule? And I take it you're still maintaining it's not that. And so how does that factor into any of this? Your Honor, we don't see how it does factor in. I mean, the, with the agent, first of all, the agency says, you know, repeatedly, you know, in this case, that it is so that that what it's doing is that, um, let's go, like, the department has concluded that the statutes require regulation as machine guns. And there is no alternative to doing that. That's look at 83 Federal Register 6651401. I mean, and there are, I mean, we quotes other aspects of this, um, in our brief of 36 through 39 of our brief, I can sort of cite other statements to the court that are all, you know, to the same effect. And when the agency says, look, this is the this is what we we are correcting a misunderstanding of the statute. So the so first, the agency did not think it was issuing legislative rule. And the it does not look nobody, we don't think that it has any force of law. I mean, if you've got a court, like, you know, I mean, can you look at, you know, you don't like court doesn't go, you violated, you know, a ATF regulation, you know, I mean, there are statutes where, let's say an SEC regulation was promulgated, that regulation can actually be, as the court knows, the basis of a criminal case, an ATF regulation, like doesn't do that, like you're, if you're convicted, you're convicted of violating the statute, and the court is going to review that question, they know, though, as a question of law. And so there is no sense in which this is a legislative rule. But the idea that you would, even if it were like if the agency had thought, well, maybe this is a legislative rule, you go, there's nothing in its analysis that suggests that, like, if that misconception were created, that the agency would do anything different, because every single part of its analysis is based on its view that this is what statute properly read requires. So the, you know, and that's the way the district court understood this district looks and goes, Yeah, maybe it's legislative, you know, who cares, you know, and like, I'm not giving it any deference. Anyway, we're not asking for deference. So this sort of a weird kind of attempt to manufacture interesting, like, hard questions of law where none are present. We're not asking for any of these things. And we just think we're here because think ATF has the right interpretation of the statute that's what the district court said. And that's all we're asking this court to affirm. Have you finished? Yeah, I'm happy to answer. You have three more minutes. I feel that the court won't feel bad if I don't use them. I mean, there are a couple of points that counsel made, but which I can address if the court, you know, wants me to, but I'm mostly just concerned that with the court's questions and, you know, whatever I can do to help the court in analyzing the case. Okay. Well, thank you, sir. Thank you very much, Ron. Mr. Kirk, Kirk and Bird, you have two minutes on our vote. Thank you, Your Honor. And I just want to address what counsel for the ATF is sort of going with, we're saying that this is a manufactured controversy in some ways, or are, you know, saying really that the ATF rule is doing nothing. And I think this court has to accept that argument to go with the courts or with the ATF's position. And that is a position that not a single judge on any court of appeals that has considered this argument has taken. Every judge has said at the outset, this is a legislative rule. It's doing something. Bump stocks have not always been machine guns all along. And that's the position ATF is taking now. They're saying it's always been a crime. And briefly, Judge Higginson, I just want to address the hypothetical you gave my colleague about the malfunctioning trigger. That issue came up in the Staples oral argument. We know that answer. In the United States versus Fleishley, the Seventh Circuit addressed that very question. And they said a machine, a gun that malfunctions, when you pull the trigger once, it shoots twice, that's a machine gun. And in that case, there was knowledge that the gun acted that way. And therefore, there was a criminal prosecution. I guess I'm wondering, before your time runs out, I mean, again, because this is, there's still activity, at least in the sixth. And you've indicated that the government's position over time has changed. Is there any reason we wouldn't wait for the government's extended absurd to the Supreme Court? No, Your Honor, I don't think so. I mean, this is a case, unfortunately, that has divided the courts. But is the government's position, has it changed in the sixth, D.C., and tenth, and now us? I don't believe so. I believe the government has been consistent. They have always insisted this regulation, it doesn't really do anything. And Bob Sox have always been machine guns. I believe that's the government's consistent position. And I anticipate that will be in the opposition to the cert petition. Thank you very much, Your Honor.